# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| REGINALD M. POTTS, Jr., ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> SERGEANT JOHN MANOS, *et al.*, ) </br> ) </br> Defendants. ) | Case No: 11 C 3952 </br></br> Judge Joan H. Lefkow |

## ORDER

Plaintiff Reginald M. Potts, Jr., has filed a second amended complaint against various employees of Cook County Jail ("Cook County Jail" or the "Jail") in their individual capacities, Cook County, and Cook County Sheriff Thomas Dart in both his individual and official capacities. (Dkt. 52.) Potts alleges claims for excessive force, failure to protect, liability pursuant to *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and statutory indemnification. (*Id.*) The sole issue before the court is whether Potts has alleged sufficient facts against Dart in his individual capacity to survive Dart's motion to dismiss. (Dkt. 72.) For the following reasons, Dart's motion is denied.[1]

---

[1] The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because at least one defendant resides in this District and all of the events giving rise to Potts' claims occurred in this District.

# BACKGROUND[2]

Potts is a pretrial detainee at Cook County Jail. He has been repeatedly subjected to excessive force by Jail employees despite having filed "dozens of grievances" and having "pleaded directly to policymakers and supervisors at the Cook County Jail on numerous occasions about the improper use of pepper spray and excessive force by Jail employees." (Dkt. 52 ¶ 4.) Potts alleges one incident in particular that occurred on May 27, 2009. According to Potts, he was taking a shower at the Jail when a Jail employee turned off the water and then sprayed Potts with oleoresin capiscum spray ("OC spray"), or pepper spray. Jail employees refused to allow Potts to shower to remove the spray. They then handcuffed and shackled Potts and fitted him with a waist chain to take him to the medical unit to be treated for the pepper spray. On the way there, Jail employees allegedly twisted Potts' cuffed wrist and dragged him on the concrete, causing Potts to suffer injuries to his head, back and ankles. Potts alleges he reported the incident to Jail supervisors but that they took no action to investigate the force.

This shower incident is but one instance of physical abuse at Cook County Jail and is part of a pattern and practice of unlawful actions. Potts enumerates multiple other incidents in which he was physically abused or otherwise mistreated by Jail employees. After each instance, he complained to or notified Jail supervisors but does not know if any action was taken to investigate his allegations or take corrective action against any Jail employee.

Potts has repeatedly notified a class of defendants he labels the "Supervisor Defendants"—including Dart—about the conditions of his confinement at the Jail. He also notes

---

[2] These facts are taken from the second amended complaint and are presumed true for purposes of resolving the motion to dismiss. *See, e.g., Barnes* v. *Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

a Jail policy that requires a "Use of Force" report to be filled out every time a Jail employee uses OC spray or other force on a detainee. He thus states,

> On information and belief, some or all of the Supervisor Defendants received such reports or were otherwise notified each time a Jail employee used force on Potts. On information and belief, video cameras recorded each time a jail employee used force, and the video recordings are in the possession or control of the Cook County Sheriff's Office. In addition, on information and belief, the Supervisor Defendants participated in high-level meetings in which the use of force against Potts was discussed.

(*Id.* ¶ 33.)

Based on these allegations, Potts states that "the Supervisor Defendants were thus personally aware that Jail employees were repeatedly using excessive force on Potts, not to maintain or restore discipline, but instead to maliciously cause Potts harm." (*Id.* ¶ 34.) By failing to protect Potts and ignoring his grievances and complaints, Jail employees were deliberately indifferent to the risks Potts faced, violating 42 U.S.C. § 1983 and Potts' Fourteenth Amendment rights. In addition to alleging Count II against Dart in his individual capacity, Potts alleges three other counts against different defendants and/or against Dart in his official capacity. In Count I, Potts alleges a claim against various Jail employees for violation of § 1983 by using excessive force against him. In Count III, he alleges that the policy and practice of Jail employees of using excessive force on detainees results in *Monell* liability against Dart in his official capacity,[3] and in Count IV he alleges that the Cook County Sheriff is

---

[3] The court presumes that the references to "the Sheriff of Cook County" in Count III, for *Monell* liability, refers to Dart in his official, and not individual, capacity. (Dkt. 52 ¶ 51.) This differs from Potts' references to Dart in his individual capacity in Potts' failure to protect claim, where Potts refers to Dart by his name and not his title. (*Id.* ¶ 44.) In any case, Potts cannot bring his *Monell* claim against Dart in his personal capacity. *See Wilson* v. *Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir. 1988) ("Because personal-capacity suits are really suits against the official as an individual, not against the government entity, *Monell* is always inapplicable.").

responsible for paying any tort judgment for compensatory damages for which Cook County employees are liable within the scope of their employment, and that Cook County is liable to pay any judgment for compensatory damages entered against the defendants.[4]

Dart has moved to dismiss the second amended complaint, arguing that he cannot be liable in his individual capacity for Potts' alleged harm. (Dkt. 72.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page,* 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. At the same time, the

---

[4] Although Potts does not cite the statute under which he alleges he is entitled to statutory indemnification, the court presumes he is referring to 745 Ill. Comp. Stat. 10/9-102, which provides that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable."

4

plaintiff need not plead legal theories.  *Hatmaker* v. *Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010).  Rather, it is the facts that count.

## ANALYSIS[5]

Dart argues that the complaint provides no factual basis to conclude that he was personally involved in any unconstitutional conduct.  (Dkt. 72 at 3.)  He asserts that Potts' statement that Dart participated in "high-level meetings in which the use of force against Potts was discussed" (dkt. 52 ¶ 33) is insufficient to meet requisite pleading standards.  (Dkt. 72 at 2-3.)  Potts responds that (1) he has met and exceeded the *Twombly* and *Iqbal* pleading standards; (2) cases from this district support his argument that a pretrial detainee can bring suit against the Cook County Sheriff in his individual capacity where the Sheriff had personal knowledge of alleged abuse; and (3) Dart is, at the very least, individually liable for the creation of "deleterious system conditions" of which Potts was a victim.  (Dkt. 75 at 8.)

In order to succeed on an individual capacity claim against a state actor under § 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation.  *Palmer* v. *Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Duncan* v. *Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).  Agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims.  *Kinslow* v. *Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

---

[5] Because, as stated above, Potts only brings Count II for failure to protect against Dart in his individual capacity, this analysis only applies to that Count as the others are not at issue.

Therefore, supervisors are held individually liable for violating the constitution only where they "kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *T.E.* v. *Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones* v. *City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Crowder* v. *Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) ("An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.").

Because Potts is a pretrial detainee, he brings his claims of failure to protect pursuant to the Fourteenth Amendment of the United States Constitution rather than the Eighth Amendment, as he would if he had already been convicted and imprisoned. *See, e.g.*, *Washington* v. *LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). Pretrial detainees, however, are entitled to protections at least as great as those afforded to prisoners, so the applicable standard under the Eighth Amendment applies. *Id.* The Supreme Court set out that standard in *Farmer* v. *Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 811 (1994). To assert a claim for failure to protect under *Farmer*, a detainee must meet a two-pronged test. First, he must demonstrate that the injury alleged is sufficiently serious, and second, he must allege that the official acted with "deliberate indifference" to the detainee's health or safety. *Id.* at 834. The second prong is subjective rather than objective, in that the detainee must demonstrate that the defendant had actual knowledge of the danger the plaintiff faced, not that a reasonable person should have known of the danger. *See, e.g., Brown* v. *Budz*, 398 F.3d 904, 913 (7th Cir. 2005); *Birch* v. *Jones*, No. 02 C 2094, 2003 WL 21210107, at *3

6

(N.D. Ill. May 21, 2003) (citing *Qian* v. *Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)).  Under the "deliberate indifference" prong, the detainee must show both that the official knew the inmate "face[d] a substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.

For example, in *Hoskins* v. *Dart*, No. 09 C 5154, 2010 WL 4823065, at **2-3 (N.D. Ill. Nov. 15, 2010), the court held that a pretrial detainee adequately alleged a failure to protect claim against two officials in the Cook County Sheriff's department in their individual capacities where the complaint stated that one official had received a grievance filed by the plaintiff after other inmates attacked him but had done nothing about it, and the other official discussed the assaults with the plaintiff but did nothing to protect him.  Conversely, the court held that the plaintiff had not adequately stated individual capacity claims against other high-level officials, including Dart, where he did not allege anything about the other officials' "knowledge of or involvement in the treatment of" him.  *Id.* at *3; *see also Lewis* v. *Cook Cnty. Dep't of Corr.*, 28 F. Supp. 2d 1073, 1079 (N.D. Ill. 1998) (plaintiff adequately stated individual capacity claims against correctional officers where he "made an allegation of direct responsibility" against them); *compare Adedeji* v. *Cobble*, No. 10 C 0892, 2013 WL 449592, at *5 (N.D. Ill. Feb. 5, 2013) (dismissing individual capacity claims against Dart where plaintiff did not allege Dart was personally present at incident that caused plaintiff harm or that "Dart was involved in turning a blind eye to inmate violence or otherwise facilitating an environment for attacks to occur at the Jail").

Dart does not contest whether the harm Potts alleges he suffered was sufficiently serious under the first prong of the *Farmer* test.[6] Instead, Dart argues that the complaint fails to allege he had sufficient knowledge to bring this suit against him in his individual capacity. Potts responds that his complaint states enough facts against Dart to allege that Dart can be held individually liable because he was personally involved in Potts' mistreatment. Specifically, Potts alleges that Dart and the other Supervisor Defendants "personally knew about the widespread pattern of abuse against Potts through the numerous grievances, complaints, and repeated communications from Potts' family, Potts' attorneys, and Potts himself." (Dkt. 75 at 3 (citing Dkt. 52 ¶ 32).) He notes that Dart "even discussed the widespread, unlawful use of force against Potts with other Jail supervisors in 'level meetings.'" (*Id.* (citing Dkt. 52 ¶ 33).) Dart asserts that these facts do not assert a "plausible claim" against Dart because Potts' allegations, which he brings "on information and belief," (dkt. 52 ¶ 33) amount to "a conclusory allegation that Sheriff Dart was present at specific meetings in which specific instances of force against Plaintiff were discussed." (Dkt. 72 at 3.)

Potts, however, has stated sufficient facts against Dart to survive a motion to dismiss. He specifically alleges that he notified Dart and other Supervisor Defendants of the conditions of his confinement, and that Dart received reports each time Jail officials used force on Potts. (Dkt. 52 ¶¶ 32-33.) Potts also alleges that Dart "participated in high-level meetings in which the use of force against Potts was discussed." (*Id.* ¶ 33.) That Potts is only able to allege this "on information and belief" is understandable at this point in the litigation. *See Brown*, 398

---

[6] Indeed, neither party cites to *Farmer* or discusses its test. Because Potts is proceeding on a failure to protect theory, however, *Farmer* is the applicable standard. *Farmer*, 511 U.S. at 832-34.

F.3d at 914 (detainee-plaintiff should not be faulted for reliance on "information and belief" where he had no knowledge of "an event offering definitive insight into the [detention] facility officials' minds"). Because Potts alleged that Dart had actual knowledge of the abuse that Potts suffered at the hands of Jail officials and that Dart took no action to protect Potts from future mistreatment, Potts has adequately alleged facts to survive Dart's motion to dismiss. *See Hoskins*, 2010 WL 4823065, at *2.

There is a second basis on which Dart could be held liable for failure to protect Potts in his individual capacity. "A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systematic inadequate conditions at the jail." *Warren ex rel. Warren* v. *Dart*, No. 09 C 3512, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) (citing *Antonelli* v. *Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996)). In *Antonelli*, the Seventh Circuit explained that the Sheriff of Cook County should not be held liable in his individual capacity for "clearly localized" claims brought by inmates where he had no knowledge of the facts underlying the claims. *Antonelli*, 81 F.3d at 1429. It explained that the Sheriff and others in high-level positions are "far from most of the day-to-day decisions that may have affected inmates." *Id.* at 1428. Under the Seventh Circuit's distinction between "clearly localized, non-systemic violations" and "potentially systemic" violations, allegations of the former should be dismissed as to the Sheriff. *Id.* at 1429. The court held that the Sheriff could be held liable in his individual capacity for those potentially systematic claims that did not solely involve the plaintiff. *Id.* at 1428-29.

Moreover, a plaintiff can show deliberate indifference of high level officials by demonstrating that he fell victim to a "general, obvious risk to inmate safety posed by the problem" whose pervasiveness would "lead to the inference that Defendants had actual knowledge of [its] substantial risk." *Byron* v. *Dart*, 825 F. Supp. 2d 958, 963-64 (N.D. Ill. 2011). The court in *Byron* held that the plaintiff had adequately alleged that jail officials were liable under a failure to protect claim after the plaintiff had been attacked in his jail cell because the plaintiff alleged the defendants "knew there was a widespread problem of faulty cell doors." *Id.* at 964.

Thus, while high level officials normally cannot be held liable for localized violations, they "are expected to have personal responsibility for systemic conditions." *Jones* v. *Sheahan*, No. 99 C 3669, 2001 WL 1230551, at *6 (N.D. Ill. Oct. 15, 2001) (citing *Antonelli*, 81 F.3d at 1429). For example, in *Jones* v. *Sheahan*, No. 01 C 6548, 2002 WL 959814, at *6 (N.D. Ill. May 9, 2002), the court denied a motion to dismiss claims against high level officials (including Cook County Sheriff Sheahan and the executive director of Cook County Jail) because, "[a]t this stage of the litigation, it is difficult to tell if the problem is non-systemic or systemic." The plaintiff there alleged various constitutional violations based on employees in the Cook County Jail mail room allegedly opening and reading privileged mail he sent to or received from attorneys. The defendants moved to dismiss, arguing that they could not be individually liable for these claims because they were not personally responsible for the alleged violations. The court denied the motion as "premature," explaining, "[i]f unidentified employees are intentionally opening and reading [the plaintiff's] legal mail, then it is clearly a non-systemic problem. If proper procedures have not been set up and are not being enforced for dealing with

10

the large volume of mail that enters and leaves Cook County Jail, then it is clearly a systemic problem." *Id.; see also Terry* v. *Cook Cnty. Dep't of Corr.*, No. 09 C 3093, 2010 WL 331720, at *3 (N.D. Ill. Jan 22, 2010) (denying Dart's motion to dismiss individual capacity claim against him where the claim was based on his "alleged failure to enact procedures, obtain funding and adopt safeguards to prevent the denial of adequate medical care to pretrial detainees"); *Lara* v. *Sheahan*, No. 06 C 669, 2007 WL 1030304, at *9 (N.D. Ill. Mar. 30, 2007) (denying Sheriff's motion to dismiss certain claims brought against him in his individual capacity where it was "difficult to tell" at that "stage of the litigation" if they were "non-systemic or systemic violations").

Here, Potts is explicitly alleging systemic claims. Potts has alleged that he has "repeatedly been subjected to excessive force by Jail employees" (dkt. 52 ¶ 3) and that Jail policymakers and supervisors have "consistently ignored [his] complaints and pleas for help; they have failed to protect Potts from repeated attacks; they have failed to adequately investigate allegations of excessive force; and they have failed to discipline Jail employees who are unlawfully using excessive force." (*Id.* ¶ 4.) He also alleges that the mistreatment he has endured is systemic rather than " isolated events." (*Id.* ¶ 23.) He points to the Jail's "policy and widespread practice of using pepper spray and other types of force to punish detainees rather than to maintain order or discipline," and its "policy and practice of failing to adequately investigate allegations of force or discipline Jail employees who violate detainees' constitutional rights." (*Id.*) Because it is not immediately apparent that these are "clearly localized, non-systemic violations," it is premature to dismiss the claims brought against Dart in his individual capacity. *Antonelli*, 81 F.3d at 1429.

**ORDER**

For the aforementioned reasons, Dart's motion to dismiss claims brought against him in his individual capacity (dkt. 72) is denied. Dart is ordered to answer the second amended complaint (dkt. 52) by November 27, 2013.

Date:   November 7, 2013   _____
U.S. District Judge Joan H. Lefkow